# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHAEL R. ROBINSON | : | Case No: 3:15-cv-00298-TMR |
| Plaintiff | : | Judge: Thomas M. Rose |
| vs. | : | |
| KLOSTERMAN BAKING COMPANY, INC. | : | |
| Defendant. | : | |

**ENTRY AND ORDER GRANTING DEFENDANT KLOSTERMAN BAKING COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT (DOC. 15) AND TERMINATING CASE**

This employment discrimination case is before the Court on the Motion for Summary Judgment (Doc. 15) filed by Defendant Klosterman Baking Company, Inc. ("Klosterman"). Plaintiff Michael Robinson ("Robinson"), a former Klosterman employee, alleges that he was fired because of his race in violation of Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1991, and Ohio Revised Code Chapter 4112. Klosterman denies that it unlawfully discriminated against Robinson and moved for summary judgment on all of his claims. Robinson opposes Klosterman's motion for summary judgment, which is now fully briefed and ripe for the Court's review. (Docs. 17, 19.)

As discussed below, Klosterman is entitled to summary judgment in its favor on Robinson's Title VII claim because Robinson failed to exhaust his administrative

1

remedies before filing this lawsuit. Klosterman is entitled to summary judgment on Robinson's other claims because Robinson failed to present admissible evidence from which a reasonable juror could find that Klosterman discriminated against him on the basis of his race. The Court therefore **GRANTS** Klosterman's Motion for Summary Judgment as to all claims and **DISMISSES** this case.[1]

## I. BACKGROUND

### A. Facts on Summary Judgment

In February 2010, Klosterman hired Robinson, who is African-American, for a utility position in its Springfield, Ohio plant. (Doc. 15-2 at ¶ 2.) In that position, Robinson would perform various tasks, including traying bread, working the "pan lines," or washing bread trays. (Doc. 16-1 at PAGEID 444.) Robinson remained in the utility department for about two and a half years, after which Klosterman promoted him to the shipping department. (*Id.* at PAGEID 444-45; Doc. 15-2 at PAGEID 422, ¶ 2-4.) Robinson stayed in shipping for eight months before transferring back to the utility department. (Doc. 16-1 at PAGEID 446.) On June 26, 2014, Klosterman suspended Robinson for three days for causing a hostile work environment. (*Id.* at PAGEID 503.) While the suspension was pending, Klosterman conducted an investigation into Robinson's workplace conduct and, based on its results, terminated Robinson's employment effective June 30, 2014. (*Id.* at PAGEID 504-5.)

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Emily Grothoff in drafting this opinion.

According to Klosterman's records, Robinson violated Klosterman's attendance policy twenty-one times, for which he was subject to disciplinary action. (Doc. 16-1 at Exs. 2-9.) Klosterman also disciplined Robinson for using abusive and profane language at least twice—the second incident leading to his termination. In the first incident, on August 17, 2012, Robinson told a supervisor that "it was BS" that he was written up for leaving a shift early. (*Id.* at 27.) Based on that remark, Klosterman suspended Robinson for three days. (*Id*. at 26-27.)

In the second incident, on June 25, 2014, Robinson was talking with a fellow employee, Tony Bray, while at the plant. (*Id.* at PAGEID 451-53, 503.) Kaitlin Walker, another employee, overhead Robinson and Bray and thought that they were talking negatively about her. (*Id.*) Walker interrupted the two men, became upset, and reported the incident to their supervisor. (*Id.*) The supervisor reprimanded Robinson, in response to which Robinson admitted that he used "some colorful or indelicate language." (Doc. 17 at 4.)

At deposition, Robinson testified that he told Walker that "she needs to shut the fuck up" just before she went to the supervisor. (Doc. 15-1 at PAGEID 352.) Robinson testified that he told the supervisor:

> This is some soft-ass shit, I did. I said, this is all – this is bullshit. I said, this is all bull crap. You're coming and talking to me about something somebody heard and didn't even know what they were talking about. And I explained to him that me and Mr. Bray was talking about our significant others.

(*Id*. at PAGEID 351.) Robinson further admitted that he raised his voice and let his emotions get the best of him. (*Id*.)

On the next day, Klosterman suspended Robinson for three days "with the intent to dismiss pending investigation due to causing a hostile work environment." (*Id.* at PAGEID 401.) Klosterman's Human Resources Coordinator conducted the investigation into Robinson's conduct, which included speaking with Walker and taking written statements from Robinson's supervisor and other employees. (Doc. 15-2 at ¶ 6, Exs. 1-4.)

During the course of the investigation, another Klosterman employee, Megan Brink, reported that Robinson and an unknown woman, on Robinson's behalf, harassed her by telephone on June 27 and 28, 2014. (*Id.* at ¶ 11.) Brink submitted two written statements and a letter to Klosterman regarding the harassment. (*Id.*, Exs. 2, 5, 6.) In the letter, Brink stated that she feared for her personal safety and the security of her vehicle on Klosterman premises due to the harassment. (*Id.*, Ex. 6.) Klosterman found Brink's reports of harassment to be credible. (*Id.* at ¶ 13.) Robinson, however, denies that he ever made any threatening or harassing phone call to Brink. (Doc. 17-1 at ¶ 6.)

Based on the investigation, Klosterman determined that Robinson had created a hostile work environment and used abusive and profane language during the June 25, 2014 incident, and therefore terminated Robinson's employment. The Human Resources Coordinator notified Robinson of his termination by telephone on June 30, 2014 and by letter dated July 1, 2014. (Doc. 15-1 at PAGEID 354-56, 403.)

Before bringing this lawsuit, Robinson neither directly contested the termination of his employment with Klosterman nor notified Klosterman that he believed it had discriminated against him on the basis of his race. (*Id.* at PAGEID 365-6.) Robinson communicated his concerns only to a union representative and a representative of the

4

local chapter of the NAACP. (*Id*.) Robinson subsequently filed a charge with the National Labor Relations Board alleging that the union failed to properly represent him in processing his grievance, but he never filed an administrative charge with the Equal Employment Opportunity Commission or the Ohio Civil Rights Commission. (*Id*. at PAGEID 361-2, 404.)

Robinson testified that he believes other Klosterman employees, who are white, engaged in similar or worse misconduct than he did, but received less severe disciplinary action. (*Id*. at PAGEID 362.) An employee in shipping, for example, became angry, threw a bread dolly out the door, and yelled at a supervisor. (Doc. 16-1 at 472-73.) Although the employee was sent home and terminated, Klosterman later re-hired him. (*Id*.) Another employee, who worked "on the bread side" of Klosterman, was caught with a prostitute outside the plant. (*Id*. at PAGEID 473; Doc. 15-1 at PAGEID 412.) Robinson alleges that this employee was treated more favorably, but fails to cite any evidence showing what happened after the employee was caught, much less what disciplinary action was taken by Klosterman.

Based on conversations with co-workers after his termination, Robinson learned of two additional situations where Klosterman employees engaged in misconduct, but were not disciplined. In the first instance, a white female employee allegedly grabbed two different male employees' buttocks areas and no disciplinary action was taken. (Doc. 16-1 at PAGEID 471-72.) In the second instance, a white male employee allegedly yelled and cursed at the same supervisor whom Robinson had argued with during the

5

June 25, 2014 incident. The supervisor merely walked away from the employee, however, and no disciplinary action was taken. (*Id*. at PAGEID 469-71.)

Robinson also testified regarding two other incidents at Klosterman that contributed to his belief that he was terminated because he is African-American. In 2012, Robinson went to the break room to get a soda because he was hot. (*Id*. at PAGEID 464.) A supervisor was there eating fried chicken and asked Robinson if he would like some chicken. (*Id.*) When Robinson declined, the supervisor asked if he was sure and added that the chicken was "watermelon flavor." (*Id.*) Robinson reported the incident to a Human Resources representative, who said that she would handle it. (*Id.*) Robinson did not know what, if any, action was taken by Klosterman. (*Id.*)

In the second incident, Robinson was training for a position that Klosterman gave to a white female employee instead. (*Id.* at PAGEID 468.) Robinson believed that this decision evidenced discrimination because, not only had he been training for the position, but he also had more seniority than the promoted employee. (*Id*.) Robinson also testified, however, that he believed the supervisor had a romantic interest in the other employee and might have promoted her for that reason. (*Id.*)

B. **Robinson's Claims and Klosterman's Motion for Summary Judgment**

Robinson asserts three claims for unlawful employment discrimination on the basis of race: the first under Title VII of the Civil Rights Act of 1964, the second under Section 1981 of the Civil Rights Act of 1991, and the third under Ohio Revised Code Chapter 4112. (Doc. 2.)

6

Klosterman argues that Robinson's Title VII claim should be dismissed because he did not exhaust his administrative remedies before bringing suit, and that his other claims should be dismissed because the facts cannot support a finding that Klosterman unlawfully discriminated against him. In response, Robinson does not argue that he exhausted his administrative remedies; rather, he argues that "Ohio law provides a private right of action to sue for violations of . . . [Ohio Revised Code Chapter 4112] without requiring the exhaustion [*sic*] administrative remedies." (Doc. 17 at 5.) Robinson thus abandoned his Title VII claim in favor of pursuing his claim under Ohio law, which he argues is supported by sufficient facts to survive summary judgment. (*Id.* at 6.) Robinson also failed to address his Section 1981 claim—at least by name—even though that claim is not subject to the same exhaustion-of-remedies requirement as his Title VII claim. Nonetheless, in the interest of justice and because they are both subject to the same burden-shifting analysis under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), the Court will consider the merits of Robinson's claims under both Section 1981 and Ohio Rev. Code Chapter 4112. *See Noble v. Brinker Int'l Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to inform the court of the basis for its

motion and to identify the sections of the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The adverse party then bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 24 (emphasis in original).

In deciding a motion for summary judgment, the court should not weigh the evidence, make credibility determinations, or judge the truth of the matter asserted, but it must draw all "justifiable inferences" in the light most favorable to the non-movant. *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). This does not require the court to "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). In sum, based on the evidence called to the court's attention, it must decide whether reasonable jurors could find by a preponderance of the evidence that the nonmovant is entitled to a verdict. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

### A. Robinson's Claim Under Title VII of the Civil Rights Act of 1964

Title VII proscribes discrimination in employment on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1); *see also* 29 C.F.R. § 1614.101(a). A plaintiff who claims that his employer violated Title VII must exhaust his available administrative remedies, however, before filing suit in a federal court. *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976)); *see also Mickulicz v. Garthwaite*, No. 99-4166, 2000 U.S. App. LEXIS 22248, *2-3 (6th Cir. Aug. 22, 2000). The purpose of this requirement is "to ensure that the [Equal Employment Opportunity Commission ("EEOC")] will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.'" *Haithcock*, 958 F.2d at 675 (quoting *Parsons v. Yellow Freight Systems, Inc.*, 741 F.2d 871 (6th Cir. 1984)). A claimant bringing a Title VII claim must therefore file a formal complaint with the EEOC within forty-five days of the time he reasonably suspected discrimination. *Mickulicz*, 2000 U.S. App. LEXIS 22248, at *3. If the claimant fails to file a formal complaint within that time, a court must dismiss the claimant for failure to timely exhaust administrative remedies. *Id.* (citing *Ang v. Proctor & Gamble, Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).

In this case, there is no genuine issue of material fact precluding summary judgment on the Title VII claim because it is undisputed that Robinson has not exhausted his administrative remedies. Robinson did not offer any evidence that he did so, but instead argued that his claim under Ohio law should be permitted to proceed.

9

Accordingly, the Court grants Klosterman summary judgment with respect to the Title VII claim.

### B. Robinson's Claims Under Section 1981 and Chapter 4112

Courts analyze an employment discrimination claim under Section 1981 of the Civil Rights Act of 1991 and Ohio Rev. Code Chapter 4112 by applying the same *McDonnell Douglas* burden-shifting framework that applies to a Title VII claim. *Noble*, 391 F.3d at 720. Under that framework, the employee bears the initial burden of establishing a *prima facie* case for racial discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he nevertheless suffered an adverse employment action; and (4) the employer treated other similarly situated employees outside the protected class more favorably. *McDonnell Douglass*, 411 U.S. at 802; *see also, Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). The burden then shifts to the employer, which must provide "some legitimate, nondiscriminatory reason" for its treatment of the employee. *McDonnell Douglas*, 411 U.S. at 802. Finally, the burden shifts once again to the employee, who must demonstrate that the employer's reasons for such treatment were in fact mere pretext. *Id.* at 798.

Robinson correctly notes that, in certain circumstances, plaintiffs can establish a *prima facie* case without making a showing as to the fourth element of the *McDonnell Douglas* test—specifically, that the employer treated other similarly situated employees outside the protected class more favorably. (Doc. 17 at 6 (citing, among others, *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 166 (6th Cir. 2004)).) Without such a showing, however, the Sixth Circuit has indicated that a great deal of evidence of discriminatory

animus would be necessary to establish a *prima facie* case. *Birch*, 392 F.3d at 151; *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 590 n. 1 (6th Cir. 2003). Here, Robinson has presented no such wealth of evidence. Furthermore, "[w]hile it is true that the *McDonnell Douglas* test should not be formalistically applied . . . [the Sixth Circuit] routinely affirms the grant of summary judgment for failure to establish a prima facie case based on the *McDonnell Douglas* criteria." *Green v. Fid. Invs.*, 374 Fed. Appx. 573, 577 (6th Cir. 2010). Thus, as there is not abundant evidence that Klosterman acted with discriminatory intent here, the Court will rely on the *McDonnell Douglas* framework to guide its analysis.

### 1. Whether Robinson Can Establish a *Prima Facie* Case

Klosterman does not dispute, for purposes of its motion only, that Robinson can establish the first three elements of a *prima facie* case, i.e., that Robinson is a member of a protected class, was qualified for his position, and suffered an adverse employment action. Klosterman does dispute, however, that Robinson can meet the fourth element necessary to establish a *prima facie* case. This final prong looks to whether "similarly situated" employees outside of the protected class were treated more favorably than him. *Gray v. Toshiba Am. Consumer Prods.*, 263 F. 3d 595, 599 (6th Cir. 2001); *see also*, *Geiger*, 579 F.3d at 622.

For a plaintiff to establish that he is similarly situated to another employee, he "must show that the 'comparables' are substantially similar in all respects." *Gray*, 263 F. 3d at 599 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). In the context of disciplinary actions, a court looks to whether the two individuals being compared

engaged in acts of "comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F. 3d 702, 710 (6th Cir. 2006) (citing *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). Relevant factors to consider include "the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). Courts must make "an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee." *Wright*, 455 F. 3d at 710 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)); *see also Johnson*, 319 F.3d at 867 ("[T]he weight to be given to each factor can vary depending upon the particular case."). Thus, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Id*. (citing *Ercegovich*, 154 F.3d at 352).

Here, Robinson's argument that other employees engaged in acts of comparable seriousness that make them "similarly situated" is lacking. As noted in Klosterman's Reply, Robinson relies exclusively on hearsay evidence to meet the fourth element of his *prima facie* case. Specifically, Robinson contends that four white employees are similarly situated to him—one who threw a bread dolly and yelled at a supervisor, a second who was caught with a prostitute, a third who grabbed two employees' buttocks, and a fourth who cursed at a supervisor. As to each of these employees, Robinson testified that he did not have personal knowledge of the circumstances surrounding their misconduct and Klosterman's disciplinary action, if any, in response. Instead, he relied on information gleaned from conversations with his co-workers. (Doc. 16-1 at PAGEID

12

469-73; Doc. 19-2 at PAGEID 565.) Since Robinson offers the out-of-court statements of his co-workers for the purpose of proving the truth of the matters asserted therein, they are inadmissible hearsay and cannot be considered by the Court on summary judgment. *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)). As a result, there is no evidence that could support a finding that any Klosterman employees outside the protected class were similarly situated to Robinson, but treated more favorably. Robinson therefore cannot prove a *prima facie* case under *McDonnell Douglas* and Klosterman is entitled to summary judgment on his Section 1981 and Chapter 4112 claims.

### 2. Whether Robinson Can Demonstrate Pretext

Even assuming *arguendo* that Robinson could establish a *prima facie* case, Klosterman has proffered a legitimate, nondiscriminatory reason for Robinson's termination, and Robinson fails to present evidence that Klosterman's reasoning is mere pretext. *McDonnell Douglas*, 411 U.S. at 802. Klosterman's burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000). Thus, if an employer successfully offers evidence to support a nondiscriminatory explanation for its decision, the presumption of discrimination drops. *See id.* at 143. The burden then shifts to the employee, who has "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (2000)). However, "[t]hat the employer's proffered reason is

13

unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993). Ultimately, the existence of discrimination *vel non* is determined when "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

Here, Klosterman put forward a legitimate reason for its disciplinary action, citing its belief that Robinson's behavior was not only insubordinate to his superiors, but also harassing and threatening to his coworkers. (Doc. 15 at 11-13.) As the Sixth Circuit held in *Smith v. Chrysler Corporation*, "in order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." 155 F.3d 799, 807 (6th Cir. 1998). A court need not, however, "require that the decisional process used by the employer be optimal or that it le[ave] no stone unturned." *Id*. Here, Klosterman presented evidence that it conducted an investigation into the June 25, 2014 incident and reviewed complaints from other employees before terminating Robinson's employment. (Doc. 15 at 11-13.) Klosterman has established its reasonable reliance on the facts before it. It thus met its burden to produce a valid, nondiscriminatory reason for its adverse employment action.

Robinson fails to produce evidence that could establish, by a preponderance of the evidence, that Klosterman's explanation is pretext. "A plaintiff can demonstrate

pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Robinson essentially disputes that Klosterman's reasoning was sufficient to justify his termination, and argues that Klosterman had a duty to investigate whether Robinson did in fact make a phone call to threaten and harass one of its female employees. (Doc. 17 at 10.) Robinson maintains that since it is unproven whether this incident occurred, there is a genuine issue of material fact. *Id*. Robinson, however, misstates the law. As noted above, an employer does not need to ensure that "no stone is unturned" during its investigation and decision making process, but must demonstrate only "reasonable reliance on the particularized facts that were before it at the time the decision was made." *Smith*, 155 F.3d at 807. Klosterman has met this burden and had no duty to prove the truthfulness of the female employee's report of harassment. Any dispute of fact concerning the truthfulness of that report is therefore irrelevant.

The remaining evidence that Robinson relies on is his testimony regarding a supervisor's demeaning and derogatory remark about "watermelon flavor" fried chicken. (Doc. 17 at 2.) While this remark was indeed offensive and inappropriate, it is an "isolated and ambiguous statement[]" that was made two years before the events leading to Robinson's termination. *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989). Nor is there any evidence that the supervisor who made the remark had any role in the decision to terminate Robinson's employment. Robinson's testimony

15

regarding the remark is therefore insufficient to create a genuine issue of material fact as to his claim for employment discrimination. *Id.; see also Alexander v. City of Toledo*, No. 99-3875, 2000 WL 1871693 at *2 (6th Cir. Dec. 13, 2000).

Robinson's failure to make a showing of pretext under the *McDonnell Douglas* framework provides separate and independent grounds for the entry of summary judgment in Klosterman's favor on Robinson's Section 1981 and Chapter 4112 claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Klosterman's Motion for Summary Judgment (Doc. 15). This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, July 5, 2017.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE